This morning is number 206 F&G Research Incorporated v. Paten Wireless Technologies, Inc. Let's see, Mr. Brofsky? Yes. Okay, and you've reserved five minutes for rebuttal, correct? Correct. Okay, and you're familiar with the lighting system? Yes. Okay, you can start whenever you're ready. This case involves a very important question of accountability of a foreign manufacturer for patent infringement in a district court. In this case, the court said there were insufficient contacts or minimum contacts with the forum and therefore ultimately dismissed it before judgment, which was entered against the defendant. In my research, this court has not really faced this issue exactly before. The Supreme Court of the United States has, and it came down 4 to 4. I'm sorry. Well, when you say this issue, what issue is it that you are identifying as having been? The contacts with the forum state, minimum contacts. Are you referring to Stream of Commerce and Anastahi? Yes, correct. But before we get there, my understanding of the failure of proof that the lower court found, the district court was, they say, in the absence of any evidence that Paten's products are present in the state of Florida or that Paten has established a distribution chain with Florida's determination point, the mere presence in Florida of products of Paten's U.S. customers is insufficient to satisfy the Florida statute. My understanding is you had a critical failure of proof. You didn't show that any of the mice that you personally went and bought at Best Buy and these other locations actually tracked back to the company Paten. Yes. You proved that they came from Belkin, but you didn't prove that they are the Belkin mice that Belkin received from Paten. We did track back, and I think we… Where's the proof? Because that's not what the court found. I know that. The court found as a matter of fact that that's not true, and I couldn't find any evidence to the contrary anywhere. In our brief, we cite… No, not your statements. I want to know where the evidence is. Yes. It's in the… The evidence is twofold. First of all, we have some, you know, obtained during the discovery, and we show the court various invoices. I've read those invoices. I have no doubt that you are correct. Excuse me. Stop. Could you please leave? We're not supposed to take pictures in the courtroom. All right. Let me stop. Yes. You could just stop taking pictures. We're not permitted to take pictures in the courtroom. Okay. You can stay, but please don't take any more pictures, okay? Thank you. You can go ahead. We – getting back to the invoices that you asked about – we showed the invoices from the manufacturer to various companies in the United States. These invoices had model numbers on them. We have tracked those model numbers to mice which were sold in Florida, specifically – I think it was Bespaline or Serpentine. I'm not sure which. Well, where is the proof that those ones that you purchased are the ones that came from patent? That's the problem. Lots of people can manufacture the same model of something. Lots of people can, and you have not shown either. You didn't show that Belkin only buys mice from patent, which you could have done very easily. You had six months of discovery with a third-party subpoena. You could have done it very easily and found out, does Belkin buy these mice from anyone else? If they said no, then you've got your link. You could have proven. See? Belkin mice had to have come from patent. They don't buy them from anyone else. You didn't do that. You didn't trace them. Excuse me. That's not a correct statement. Okay. So tell me. What's wrong with Belkin? First of all, we undertook discovery. They said that they sell to the United States to four different companies. I believe they said Tarvis, Belkin was one. Creative was another. We got actual invoices, and those are in the record. Yes, I've seen them. Yes. Which have model numbers on them. They sold mice. Are model numbers different from serial numbers? I understand them to be different. No. Model numbers are used by certain manufacturers. They're not used by the retail seller. They're used by the manufacturer. I just didn't see any evidence in the record. Evidence that the model numbers necessarily corresponded to only products produced by patent. And that's the fact finding that you're asking us to overturn at the district court, which we have to look at and say, is there not substantial or clear error? Is it in clear error? And I'm not seeing the evidence that would warrant overturning that. Based on you not doing it, finding it during discovery. If you look at the appendix, pages 161 through 175, these are public websites. Now, this is evidence. I'm sorry, please go ahead. I think you're going to the same place I am. These were not in evidence, right? No, but they were readily available. Well, websites change all the time. I just don't think this is judicially noticeable. I think you'll have to look somewhere else other than, as far as I'm concerned at least, and I don't know if my colleagues share this, but I think if we spend some time on the websites, it's probably not going to be fruitful, because I don't think that's going to be something we can consider. All right. So you were going down the line and talking about the model numbers and linking that up with the products that we bought. Yes. So, I mean, what those websites show for the particular mice are certain model numbers which are shown on the invoice. But you need the websites in order to make that connection? Yes. Okay, and you didn't introduce the websites before the discussion? I don't recall, Your Honor, but I don't recall if they were introduced or not. But, yes, you do need those websites or something to make the connection. But we know for sure that certain scrolling mice was sold by this company based in China to certain United States companies, four of them, and paid for in the United States by those companies who then turned around and sold those mice. How do you know it was those mice? That's the problem. That's what I can't get over. Look, I bet you're probably 100% right. I bet these are Patton's mice. I do. I mean, that's my instinct. But I can't replace that for evidence, and I can't find that evidence. And that's what I'm lost at because the district court made a fact-finding, and I've got to review that for clear error, and I'd love to be able to find that. Well, you can make that presumption. You just made it yourself. How could we make a presumption? The district court made a fact-finding. How could I make a presumption that these particular mice were manufactured by something? That's a fact-finding. Presumptions are for legal purposes. How could I make a presumption of a fact-finding? Well, I had asked the court to take judicial notice, Well, I'm speaking for myself. Perhaps I went too far by saying that you shouldn't pursue it. As far as I'm concerned, I would say that I don't think that website, including website material in an appendix in the court of appeals gets you over the need to prove to the district court what you need to prove. I think if this wasn't introduced before the district court, it's very hard for us to say the district court erred by saying the evidence did not satisfy what was requisite. Well, I understand how you could determine this question to no look at the evidence. Well, where there's a factual determination to be made on a jurisdictional question, we allow trial judges to make jurisdictional fact determinations. I don't think that's the standard. I'm sorry to disagree with you, but I believe the standard is for a court of appeals to look at everything de novo. De novo on questions of when there's a question, when jurisdiction turns on a factual determination made on the basis of a record before the district court, that you can introduce new evidence before the court of appeals? No, I wouldn't say new evidence. This is new evidence. I gather you didn't introduce it to the district court, right? Well, let's assume I didn't. I don't think so. Okay, so it would be new evidence. Right. Right. So we do have the case in which you're asking a court of appeals to make a factual determination based on new evidence, and you say it's well-established law that that is permissible in a jurisdictional setting? I believe so, yes. Do you have any case law to support that? I believe in our brief when we talk about standards, let's see. It says, I have the 11th Circuit where this case will come up on a jurisdictional issue. An appeals court has the power to decide issues of sufficiency of process and personal jurisdiction de novo, which were raised by a motion under Rule 60b-4, which is how this whole case started. And I cite the references here on page 11 of my brief. And you think that those constitute authority for the proposition that the de novo review conducted by the court of appeals can include consideration of new evidence not before the district court? Yes. And factual findings based on that new evidence? I believe so, because they were raised by motion under Rule 60b-4, which was a motion filed by the defendants to remove the default judgment for lack of personal jurisdiction. Mr. Brodsky, you're into your rebuttal time. Do you want to save your rebuttal? Well, I'd like to discuss one more case if I might, if you take it out of my rebuttal time. And that's the Asahai Metal Industries case. That's in the briefs. It was cited by them. I just hate to see you lose your full rebuttal. Well, I think that's the case which determines this regardless of whether we make the final connection that you seem to believe is missing. In that case, it was a four-to-four ruling. But, counsel, in that case, there was no question that it was the products of the foreign company that were found in the state. There was no dispute over that point of fact, which is at issue here. Yeah, but I mean, okay, that is true. There's really no dispute that they sold the products here in the United States to four companies. It's a given. We have proven that. Four U.S. companies who have a distribution network encompassing every state in the union, almost, a certain city. They took these mice and sold them somewhere. In every state where they have a store. To me, that's sufficient by itself. Well, your last assertion, that they sold them in every state where they have a store, is what you didn't prove. But they sell them somewhere. They won't be, but what you didn't prove, it seems to me, is the statement, if you had proved everything you've just said, including that they sold them in every state in which they have a store, and you proved what you did, I think, that they have a store in Florida, you'd have completed the circle. This is, it seems to me, just a simple case of a gap in the proof. You want us to fill it in, either with the internet website information you've submitted to us, or by a kind of assumption that it's likely that these sales were made. But that's... Let me answer your question this way. I hate to answer a question with a question. But, what if you rule that Paul was correct? And what precludes me from then going ahead and bringing another suit in another jurisdiction? And make proofs that you... That would be a question that would involve, I suppose, a res judicata issue, but you may very well be able to do it in another jurisdiction. Probably can't do it in Florida under res judicata, but maybe you can do it in another jurisdiction. But that's for another day, if you haven't made your proof here. I mean, that's not something we can say, well, just bring it in another action. Therefore, why don't we go ahead and reverse the district court in this case? Well, okay. I think you should look at the proofs we have. And I think they were sufficient. You had questions. We'll give you your full rebuttal time if you need it. And we'll hear from Pat and Ms. Devins. The district court was correct in its analysis of jurisdiction under both the Florida long-run state statute as well as the Constitution. The question at the outset was because Mr. Brodsky wasn't sure, perhaps you can help us as to whether the website materials that are in the joint appendix were before the district court. I do not believe those materials were before the district court. However, if this court were to consider those materials for the sake of argument, it still doesn't make the final connection that's needed for F&G to ask this court to reconsider the district court's ruling. Even if this court were to consider those website pages, those website pages coupled with the other material that is not related to the case do not demonstrate that any of Patton's products are for sale in court. If you take even the best shot at the particular model number, there's only one of the customers where you can actually tell from the model number on the invoice is similar to, identical to the model number on the website. I have those pages for you. No, that's all right. Even then, that proof or alleged proof does not make the connection that Judge Moore was just referring to. There's no proof that the particular model number sold by Targis as indicated on the website is a product that was manufactured by Patton. So even if the court were to consider those website pages, it matters not. Was this case dismissed with prejudice? Or if a plaintiff and their counsel can go back and collect the necessary proof to make that link, are they able to rebring it in Florida? Because I think it would be really easy to probably make that link. They didn't do it, but I think it would probably be easy to. I haven't researched that issue thoroughly. I don't know what race to defend principles might apply. I actually have some of the stuff. Well, what's the dismissal with prejudice? How about that? Let me ask you. Yes. The dismissal with prejudice? I don't believe with prejudice was in the order. Okay. So if we can review all the facts under the best scenario that F&G could put forward, here are the facts that relate to the stream of commerce theory. First, Patent sells its scrolling wheel mouse devices to United States customers, Belkin, Creative, Targus, Logitech. Second, according to F&G's attorney, upon his information and belief, these customers sell mice at retail stores in Florida. Third, in 2005, F&G's attorney purchased in Florida at retail stores scrolling wheel mouse devices branded by these three customers. Again, there's no proof in the record that any of the mice that F&G's attorney purchased are mice that were manufactured by Patent. And fourth, the documents produced by Patent during jurisdictional discovery in this case show that ultimately those products sold to those four customers are delivered to places in the United States, not Florida. That's it. That's the totality of the facts. Delivered initially, at least. Initially, yes. Right, and what we don't know is what happens to them after that. Exactly, Your Honor. And nothing is in the record to demonstrate that. And again, if the court were to consider the web pages as part of the best shot of F&G's proof before the court on the stream of commerce theory, the proof still doesn't show that any of the products manufactured by Patent were sold or for sale in Florida. This case is unlike the Beverly Hills fan case in which it was undisputed that 52 of the infringing fans were present in the forum state. This case is unlike the Asahi case where at least 21 of the defendant's tire valve stems were present in the forum state in California. This state is unlike this court's case in CEA v. CMO 395 F2nd 1315. That case was not cited in our brief, but it was cited in our reply brief at the district court level at docket entry 84. What's the site on that case again? 395 F2nd 1315. Probably F3rd, I'm guessing. I'm sorry? F3rd maybe? It probably is F3rd because it's 2005. All right, and what was the page site again? The pin site is F3rd 1315. Okay. This case is unlike even that case where the evidence showed that the infringing products were likely sold in the forum state in substantial quantities and where there was evidence of pre-filing orders of the defendant's products in the forum state. Unlike all of those cases, there's no evidence in this case, as the court has already noted, that the alleged infringing product was actually sold or for sale in Florida. But even if there was, Your Honors, even if there was such evidence, under Justice O'Connor's standard in the SAHI, there still had to have been something more. The mere placement of the product into the stream of commerce is not enough according to Justice O'Connor's standard. There's no evidence of any additional conduct on the part of patent in this case that would permit the satisfaction of Justice O'Connor's standard in the SAHI. There's no evidence that patent was aware or should have been aware that its products would be sold in Florida. Of course, you've read the briefs. You've seen the evidence to the affidavit or declaration of patents. But counsel, Justice O'Connor's statements in the SAHI are simply a plurality, and this court has thus far declined to express its position on O'Connor v. Brennan in a SAHI. Indeed, Your Honor. So you're suggesting that you think we should adopt the O'Connor's stricter, more difficult standard for personal jurisdiction. I think that the O'Connor standard is actually, well... It certainly requires more than the Brennan standard. Yes, the additional conduct, yes. This case is not the case for this court to need to make a determination on that issue because the proof hasn't been made up properly. In the CEA v. CMO case, the court could have taken a position on that issue, but because on the underlying trial level no jurisdictional discovery had been done, the court indicated that additional discovery might be needed so that one could determine whether the Justice O'Connor standard could have been met. So I'm not suggesting that the court need go down that path in this case because it's just not proper for the court to do that under the facts of this particular case. Unless the court has any further questions, I conclude my argument. No. Thank you, Ms. Devon. Mr. Brodsky, you have your rebuttal. Yes. First of all, on the SAHI case, we urge that Justice Brennan's position be taken, of course, and that is that when a defendant places goods in the stream of commerce defined as the regular and anticipated flow of products from manufacture to distribution to retail sales, minimum contacts are met, period. This court has never taken a position, as I have just espoused, and I believe this is the case, even without the proof of nexus that the mice were put into a stream of commerce that was sold in the United States to United States companies who have established distribution chains in every state of the union. That, to me, is what Justice Brennan was saying is sufficient. To do otherwise is to have a foreign manufacturer not have accountability for patent infringement, and that is wrong, in my opinion. The other issue is perhaps if we hadn't made the proof, we should be given the opportunity to upon remand because we could bring this case again. I'm a little unclear as to why, since it's pretty clear that was what the district court thought was the flaw here, was the failure of proof. Why didn't you just cure the problem then and there as opposed to spending the time, money, and resources to come all the way up here? She mocked the case closed. She dismissed it, and she said the case is closed. Wasn't it the default judgment? I mean, that's why you're here, because if we were to overrule our own personal jurisdiction, you've got a default judgment against us. That's what I believe, yes. So that's why you're here. Oh, okay. That's correct. Well, that does change it. I forgot about the default judgment. Yes, that's exactly right. So she relieved the default judgment as well, on the back of the jurisdiction. So the last point I was trying to make is that we could bring the case again. Even in Florida, because it was not dismissed without prejudice, just mocked the case closed, which is not a dismissal with prejudice, perhaps we should be giving them the opportunity on a remand to make that connection. Mr. Bruxy, thank you. Ms. Evans, thank you. The case is submitted, and that concludes this morning's sittings.